IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |
|---|---|
| WESI, LLC, f/k/a WILLIAMS ENVIRONMENTAL SERVICES, LLC, and WILLIAMS GROUP INTERNATIONAL, LLC, <br><br>                **Plaintiffs,**<br><br>   **v.**<br><br>COMPASS ENVIRONMENTAL, INC. and WILLIAMS ENVIRONMENTAL SERVICES, INC., f/k/a WES ACQUISITION CO.,<br><br>                **Defendants.** | **1:06-cv-2100-WSD** |

## OPINION AND ORDER

This matter is before the Court on Plaintiffs and Counter-Defendants

Williams Environmental Services, LLC ("Old WESI") and Williams Group

International, LLC's ("WGI") Motion for Judgment on the Pleadings [22].

## I.   FACTUAL BACKGROUND

This is a business dispute involving an asset purchase agreement between

Plaintiffs and Defendants Compass Environmental, Inc. ("Compass") and Williams

Environmental Services, Inc. ("New WESI").  In October 2004, Old WESI and its

parent company, WGI, entered into an Asset Purchase Agreement ("the APA" or "the Agreement") with Defendants for $17.8 million.  Plaintiffs agreed to sell substantially all the assets of Old WESI, an environmental site remediation and restoration business, to New WESI–Compass's wholly owned subsidiary.  The assets included leases, client contracts, accounts receivable, and physical and intellectual property.  A portion of the $17.8 million purchase price, $1.4 million, was placed in escrow as security for certain indemnification obligations to which Plaintiffs agreed in the APA.  If a valid indemnification claim was not asserted, the Agreement provided that Plaintiffs would receive the $1.4 million held in escrow in two disbursements approximately a year and a half after the sale.  Defendants had under the APA access to Plaintiffs' personnel, facilities, books, and records prior to closing in order to conduct due diligence.

*The Asset Purchase Agreement*

The APA describes Plaintiffs' indemnification obligations and states that Plaintiffs must indemnify New WESI for losses resulting from:

> (i) the untruth, inaccuracy or incompleteness as of the date hereof . . . or on the Closing Date of any representation or warranty . . . contained in this Agreement, Schedules or Revised Schedules hereto (or in any document, writing, certificate, date or financial

> statements delivered by [Old WESI] under this
> Agreement . . . or (ii) the failure by [Plaintiffs] to perform
> any of its obligations hereunder.

(APA, at § 10.1(a)).  The APA also provides that Plaintiffs' duty to indemnify was

not triggered unless the total amount of the indemnification claim exceeded

$250,000, and the total amount of indemnification was capped at $2.2 million.  (Id.

at § 10.3(b)).  In the APA, the parties disclaimed the right to recover "any special,

incidental or consequential damages (including lost profits) arising out of any

breach for the representations, warranties, covenants or other provisions of this

Agreement."  (Id. at § 10.10(a)).  The APA stated that the indemnification

remedies in the APA were the exclusive means of recovering money damages

under the Agreement, except for claims of fraud:

> 10.9  Exclusive Remedy.  Notwithstanding anything in
> this Agreement to the contrary, following the Closing,
> the sole and exclusive basis (other than with respect to
> claims for fraud) on which any party may recover
> monetary damages under this Agreement from any other
> party, whether based upon breach of representations and
> warranties, breach of any covenant, or otherwise, shall be
> in accordance with the indemnification provisions set
> forth in this Article X, and subject to the limitations,
> exclusions, Cap and Basket Amount set forth in this
> Article X . . . .

(Id. § 10.9.)

On July 27, 2005, shortly before the first disbursement of funds escrowed under the APA, Defendants submitted a $1.5 million request for indemnification based on twelve claims. Plaintiffs refused the claims, stating they were unfounded and inflated. On September 28, 2006, Plaintiffs filed this action, asserting claims for breach of contract and declaratory judgment. The Complaint centers on the parties' respective rights and obligations related to the amount in escrow. On October 13, 2006, Defendants filed a Counterclaim against Plaintiffs. The Counterclaim asserts five counts of breach of contract, three counts of fraud, one count of unjust enrichment, and one count of conversion.

*The Atlanta Gas & Light Project*

Defendants' counterclaim for indemnification is based on several different issues. Defendants claim that Old WESI improperly retained a portion of a payment that it received from Atlanta Gas & Light ("AGL") for civil and infrastructure improvement services performed for AGL. The AGL contract was an asset Old WESI sold to New WESI. Because Old WESI was unable to obtain consent to assign the contract, the parties agreed in the APA that the benefits to the AGL contract would be equitably assigned to New WESI. Defendants allege that Old WESI was paid by AGL for the services, but refused to convey these funds to

New WESI as required under the Agreement.  New WESI claims when Old WESI retained these funds, it breached the APA, committed conversion, and was unjustly enriched.

*The Augusta Project*

Defendants contend that Old WESI defrauded them by misrepresenting earnings projections and the completion date of a project in Augusta, Georgia ("the Augusta Project").  The contract for the Augusta Project was also an asset transferred to New WESI pursuant to the Agreement.  Defendants contend that a series of "material adverse changes" caused the actual earnings from the Augusta Project to fall short of earnings and completion date projections, and Plaintiffs' failure to inform New WESI of the changes subjects Old WESI to liability for breach of contract and fraud.

*Accounts Receivable and Equipment*

Defendants allege that Old WESI falsely represented that approximately $300,000 of accounts receivable reflected on certain balance sheets were fully completed, bona fide transactions that were unconditionally due from the debtors. New WESI alleges claims for breach of contract and fraud based upon the representations regarding the receivables.

Fourth, Defendants allege that Old WESI falsely represented in the APA that certain construction equipment it sold to New WESI was adequate, fit to be used, and in good operating condition when the equipment was not in such condition.[1] New WESI alleges claims for breach of contract and fraud based on the equipment representations.

On December 13, 2006, Plaintiffs moved for judgment on the pleadings, arguing that Defendants' indemnification claims are unfounded or exaggerated. Plaintiffs ask the Court to grant judgment in their favor on Counts II, III, IV, V, VIII, and X of Defendants' Counterclaims.  Defendants respond that their Counterclaim properly states claims for conversion, unjust enrichment, fraud, and breach of contract.

## II.    DISCUSSION

### A.    Standard of Review

"A motion for judgment on the pleadings is subject to the same standard as is a Rule 12(b)(6) motion to dismiss."  Provident Mut. Life Ins. Co. of Philadelphia v. City of Atlanta, 864 F. Supp. 1274, 1278 (N.D. Ga. 1994).  In considering a

---

[1] Defendants make other allegations in their Counterclaim, but they are not the subject of Plaintiffs' Motion.

motion for judgment on the pleadings, the allegations contained in the complaint must be accepted as true and the facts and all inferences must be construed in the light most favorable to the nonmoving party.  See Hawthorne v. Mac Adjustment, Inc., 140 F.3d 1367, 1370 (11th Cir. 1998).  A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  "Although a plaintiff is not held to a very high standard in a motion to dismiss for failure to state a claim, some minimal pleading standard does exist."  Wagner v. Daewoo Heavy Indus. Am. Corp., 289 F.3d 1268, 1270 (11th Cir.), *rev'd on other grounds*, 314 F.3d 541 (11th Cir. 2002) (en banc).  "To survive a motion to dismiss, plaintiffs must do more than merely state legal conclusions; they are required to allege some specific factual bases for those conclusions or face dismissal of their claims."  Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1263 (11th Cir. 2004) ("[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.") (citations omitted).

B.    Defendants' Fraud Claims (Counts V, VIII, and X)

Plaintiffs first argue that Defendants' fraud claims should be dismissed because they do not sufficiently plead the element of scienter, i.e. knowledge of falsity.  The parties do not agree on whether Georgia or Illinois law applies to Defendants' fraud claims, but the Court concludes Defendants' fraud claims fail under Georgia and Illinois law.

In Georgia and Illinois, the common law tort of fraud requires five elements: "(1) false representation by defendant; (2) with scienter, or knowledge of falsity; (3) with intent to deceive plaintiff or to induce plaintiff into acting or refraining from acting; (4) on which plaintiff justifiably relied; (5) with proximate cause of damages to plaintiff."  Worsham v. Provident Cos., Inc., 249 F. Supp. 2d 1325, 1331 (N.D. Ga. 2002); see also Ledford v. Smith, 618 S.E.2d 627, 634 (Ga. Ct. App. 2005); Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584, 591 (Ill. 1997) ("The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.").

Federal Rule of Civil Procedure 9(b) sets specific requirements for alleging fraud.  Rule 9(b) requires:  "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity."  Fed. R. Civ. P. 9(b); see also United States v. Lab. Corp. of Am. Inc., 290 F.3d 1301, 1310 (11th Cir. 2002).  "The notion [of the Rule] is that a heightened pleading requirement imparts a note of seriousness and encourages a greater degree of pre-institution investigation by the plaintiff."  5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1296, at 31 (3d. ed. 2004).  The Rule therefore requires claimants to plead "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby.  [C]onclusory allegations that a defendant's conduct was fraudulent and deceptive are not sufficient to satisfy the rule."  Parnes v. Gateway 2000, Inc., 122 F.3d 539, 549-50 (8th Cir. 1997) (dismissing complaint because plaintiffs' allegation of fraud "is simply not particularized") (quotations and citations omitted).  Essentially, Rule 9(b) requires plaintiffs in a fraud case to specify the who, what, where, when, why and how of the alleged fraud.  In re World Access, Inc., 119 F. Supp. 2d 1348, 1353 (N.D. Ga. 2000).

-9-

Each of Defendants' three fraud counts make only the general allegation that Plaintiffs "knew or should have known" of certain facts or events, but failed to disclose them.  This is not the particularity required under the Federal Rules, and Defendants have not sufficiently plead the scienter requirement necessary for a fraud claim.[2]

"[K]nowledge of falsity is an essential element in a cause of action for deceit based upon fraud."  Hertz Corp. v. Cox, 430 F.2d 1365, 1375 (5th Cir. 1970).[3]  When a claimant alleges that defendants "knew or should have known" of the falsity of their statements, "[t]hese allegations assert at most a constructive knowledge on the part of the defendants, and this is not enough."  Id.  This type of allegation "is lacking at least in the essential averment that the defendants had actual knowledge" of the falsity.  Id.  (interpreting Georgia law and stating that "[n]umerous other cases could be cited for the proposition that scienter is an essential element in fraud actions for damages"); see also Landon v. GTE Comm.

---

[2]  Defendants' "knew or should have known" claim raises doubt as to whether Defendants also failed to plead the "intent" element adequately.

[3]  In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 20, 1981.

Servs., Inc., 696 F. Supp. 1213, 1219 (N.D. Ill. 1988) (holding that an allegation that defendant "knew or should have known" that representations were false is "insufficient to plead scienter and intent").

Defendants essentially ignore Plaintiffs' scienter argument as it applies to Counts VIII and X, dismissively stating in a footnote that their fraud pleadings are sufficiently specific.  Because Counts VIII and X only contain the allegation that Plaintiffs "knew or should have known" of the falsity of their statements, these Counts must be dismissed for failure to sufficiently plead the scienter, or knowledge, element of fraud.

Defendants specifically challenge Plaintiffs' particularity argument as it applies to Count V–the Augusta Project fraud claim.  Defendants point to a sentence in a breach of contract count, which alleges that Old WESI misrepresented the financial condition of its business by failing to disclose the "material adverse changes to the Augusta Project . . . even though Old WESI had knowledge of these changes."  (Counterclaim, at ¶ 41.)  Defendants argue that because they incorporate their breach of contract allegations in their fraud claim, this sentence sufficiently satisfies the scienter requirement for their fraud count.

The incorporation is contradicted by the specific allegations in Defendants' fraud claim. In Count V, Defendants allege that Plaintiffs "knew or should have known that the material adverse changes to the Augusta Project made it impossible to complete the August[a] Project by Spring of 2005." (Counterclaim, at ¶ 46.) The specific fraud allegations–those Defendants intended to support their fraud count–acknowledge Defendants are uncertain whether Old WESI actually knew or merely should have known of the changes that would affect the projections. These allegations do not meet the strict requirements of Rule 9(b). The Court thus necessarily concludes that Counts V, VIII, and X are dismissed without prejudice for failure to plead each element of fraud and for failing to meet the heightened pleading requirements of Rule 9(b).[4]

---

[4] Plaintiffs argue that the fraud claims should be dismissed with prejudice. Defendants, on the other hand, argue that the Court should give New WESI leave to amend its counterclaims if it determines the fraud claims are defective. They do not, however, file a motion for leave to amend their Counterclaim, nor do they submit a proposed Amended Counterclaim. A judgment on the pleadings is a judgment, with prejudice, on the merits. 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1367, at 205-206 (3d. ed. 2004) ("Rule 12(c) judgment on the pleadings procedure primarily is addressed to the . . . function of disposing of cases on the basis of the underlying substantive merits of the parties' claims and defenses as they are revealed in the formal pleadings."). The Court, however, has the discretion simply to grant dismissal of the action instead of entering judgment. Amersbach v. Cleveland, 598 F.2d 1033, 1038 (6th Cir. 1979), *disapproved of on other grounds by* Garcia v. San Antonio Metro. Transit Auth.,

C.     Breach of Contract (Count IV) and Defendants' Demand for
       Indemnification Related to the Augusta Project[5]

Plaintiffs argue that Defendants' contract claim based on the Augusta

Project (Count IV) fails[6] because it is foreclosed by the Limitation on Liability

Clause in the parties' Agreement.[7]  (Reply [36], at 13 n.6, 14.)  Plaintiffs assert that

the APA provides that no party is "liable for any special, incidental or

consequential damages (including lost profits) arising out of any breach."  (Reply,

at 14.)  Because the only recovery Defendants seek related to the Augusta Project

are lost profits from Plaintiffs' failure to disclose the material adverse changes with

the Augusta Project, Plaintiffs argue the breach of contract claim fails.  (Id.)

─────────────────

469 U.S. 528 (1985); see also 5C Wright & Miller, supra, at 205 ("The motion for
judgment on the pleadings . . . permit[s] [a] party . . . to . . . secure a *dismissal or
final judgment* on the basis of the pleadings.").  "The mere fact the motion was
couched in the terms of Rule 12(c) does not prevent the district court from
disposing of the motion by dismissal rather than by judgment."  Amersbach, 598
F.2d at 1038.

    [5]  Both parties agree that Delaware law governs the contract and the
indemnification claims at issue in this litigation.

    [6]  Plaintiffs also argue that Defendants' Demand for Indemnification related
to the Augusta Project fails.  Plaintiffs, however, do not identify a specific count in
the Counterclaim which they seek to have dismissed.

    [7]  Initially, Plaintiffs argued the merger clause in the APA precluded the
breach of contract claim.  They expressly abandoned this argument in their Reply
brief.

-13-

Defendants contend their damages are direct and are not consequential damages arising from lost profits. Because the Augusta Project contracts conveyed by Old WESI to New WESI were not as valuable as the ones for which they contracted,[8] New WESI takes the position it incurred direct damages and is entitled to recover them, and that the APA's provision foreclosing special, incidental, and consequential damages does not apply. (Opp. to Pl. Mot., at 18.) Defendants argue their direct damages are the "difference in the value of the promised conveyance and the actual conveyance," and the projected earnings of the Augusta Project are merely a basis to valuate the contracts. (Opp. to Pl. Mot., at 18-19.)

The Court is required to construe all facts and inferences in the light most favorable to Defendants, and judgment on the pleadings should not be granted unless it appears that Defendants cannot prove any set of facts in support of their claim which would entitle them to relief. The Court agrees that consequential damages, including lost profits, are not permissible damages under the APA. Defendants assert that they are only seeking direct damages, i.e. the difference in

---

[8] Defendants contend they contracted to purchase the rights and benefits of the Augusta Project with no undisclosed, material adverse changes since March 31, 2004, but Old WESI instead conveyed rights and benefits of the Augusta Project contracts with material adverse changes, therefore those contracts were less valuable.

-14-

the value of the promised conveyance and the actual conveyance.  This direct

damages theory may ultimately prove to be an attempt to obtain damages

prohibited under the Agreement, nevertheless the damages claim should be

subjected to discovery.  The sufficiency of Defendants' damages theory is best

addressed at the summary judgment stage.

D.    Conversion (Count III)[9]

Plaintiffs argue that Defendants fail to state a claim for conversion.  They

assert that New WESI's claim of entitlement to the AGL funds is based on the

Agreement, thus Defendants may not assert a claim of conversion.  When Old

WESI could not secure the necessary consents and waivers to assign the AGL

contract, it agreed to equitably assign the benefits of the contract to New WESI,

giving Defendants equitable title to the AGL funds.  When Old WESI did not

transmit the funds to New WESI, Defendants claim Old WESI wrongfully

converted the funds.

"Conversion consists of an unauthorized assumption and exercise of the

right of ownership over personal property belonging to another, in hostility to his

_____

[9] Both parties agree that Georgia law governs Defendants' counterclaim for
conversion.

rights; an act of dominion over the personal property of another inconsistent with his rights; or an unauthorized appropriation.  Any distinct act of dominion wrongfully asserted over another's property in denial of his right, or inconsistent with it, is a conversion." Decatur Auto Ctr., Inc. v. Wachovia Bank, N.A., 276 Ga. 817, 819 (2003) (citations omitted).  A breach of contract does not, by itself, give rise to a cause of action in tort; and when the allegation that a tort was committed adds nothing of substance to the breach of contract claim, it is mere surplusage. Faircloth v. A.L. Williams & Assocs., Inc., 206 Ga. App. 764, 766 (Ga. Ct. App. 1992).  Failure to pay money due under a contract is not the type of case for which a cause of action for conversion was intended.  Kuehn v. Selton & Assocs., Inc., 530 S.E.2d 787, 791 (Ga. Ct. App. 2000); see also Hodgskin v. Markatron, Inc., 185 Ga. App. 750, 751 (Ga. App. 1988) ("[The claimant] is not seeking to recover some specific money, either in certain bills or coins to which she had title, but instead seeks to recover a certain amount of money generally. . . . Rather, it appears [the claim] could have been discharged by the payment of any lawful currency of the United States . . . . Thus, this is not such a case for which a cause of action for conversion was intended."); Morris v. Natl'l W. Life Ins. Co., 430 S.E.2d 813, 815 (Ga. Ct. App. 1993) (stating that conversion "does not lie on

account of a mere failure to pay money due under a contract"); <u>Alpert v. Wickes</u>

<u>Cos.</u>, 354 S.E.2d 674, 676 (Ga. Ct. App. 1987) ("Plaintiffs' complaint is for

conversion. . . . In order to prevail, where title is claimed, plaintiff must present

proof of legal rather than equitable title.").[10]

Defendants' argument that they are able to assert a conversion claim because

they have equitable title to the funds is unconvincing.  Defendants offer two cases

---

[10]  Defendants argue, citing <u>Hodgskin</u>, that they may assert a claim for
conversion because they are trying to recover specific funds to which they have
title, rather than to recover "a certain amount of money generally."  (Opp. to Pl.
Mot., at 12 n.5.)  The Georgia Supreme Court discussed this distinction in detail in
<u>Decatur Auto Ctr., Inc. v. Wachovia Bank, N.A.</u>, 276 Ga. 817, 819 (2003).  In
<u>Decatur Auto</u>, the Supreme Court held that Georgia law recognizes that a specific
check or negotiable instrument can be the subject of conversion.  It explained that
"while a complaint seeking 'three thousand five hundred dollars lawful money of
the United States,' [is] insufficient to state a cause of action for conversion, a
complaint seeking 'one hundred silver certificates of five dollars each, one hundred
and fifty national bank notes . . . each for ten dollars' . . . states a valid cause of
action for conversion because each particular class of bills or notes is described,
the denominations of each class are given, and the number of bills or notes of each
denomination." <u>Id.</u>  The Supreme Court further held that "[c]onversion of checks
is actionable because checks designate specific amounts of money for use for
specific purposes." <u>Id.</u> at 820.  <u>Decatur Auto</u> does not apply here.  Defendants do
not allege in their Counterclaim that Plaintiffs misappropriated a specific check
belonging to Defendants that designated a specific dollar amount meant for a
particular purpose, they do not identify a particular set of bills that were converted,
and they do not allege that Plaintiffs withheld any other specific, identifiable
property.  Instead, Defendants allege that under the APA, Plaintiffs owed them the
funds earned through the AGL contract, but Plaintiffs retained these amounts rather
than forwarding them to Defendants.  This does not support a claim for conversion.

to support this assertion.  In <u>Hall v. Bell Finance Co.</u>, 179 S.E. 703, 704 (Ga. 1935), the Georgia Supreme Court stated that "[i]f after an employee executes a partial assignment of wages owed to him by his employer to which the employer has not assented, such assignor without consent of the assignee collects the amount so assigned and converts the same to his own use, he commits a wrongful conversion."  <u>Hall</u>, 179 S.E. at 704.  In <u>Baggerly v. Bainbridge State Bank</u>, 128 S.E. 766 (Ga. 1925), the plaintiff bank sought to preserve a tax fund to which it had an equitable title by reason of equitable assignment.  The court held that an equitable assignment of the fund authorized the bank to "apply to a court of equity for injunction to prevent illegal interference with such right in a case where the grant of such relief was proper."  <u>Baggerly</u>, 128 S.E. at 769.  <u>Hall</u> and <u>Baggerly</u> do not require the conclusion that Defendants may assert a conversion claim based entirely on payment of money due under a contract.  Defendants offer no authority for their argument that a contractual provision such as the one in this case gives a claimant the ability to assert a conversion claim for the failure to pay money due under the Agreement.

There is ample authority holding that failure to pay money due under a contract is not the type of case for which a cause of action for conversion was

intended.  Georgia law unequivocally holds that a claimant may not assert a claim for conversion based solely upon a breach of contract.  Defendants admit that their asserted entitlement to the AGL funds arises, if at all, by virtue of the parties' contract, thus Defendants' conversion claim is required to be dismissed.[11]

     E.    Unjust Enrichment (Count II)

Plaintiffs next argue that Defendants' counterclaim for unjust enrichment fails because "an unjust enrichment theory does not lie when there is an express contract."  (Pl. Mot., at 25.)  They argue that because Defendants incorporate into their unjust enrichment count other allegations in their Counterclaim, including their breach of contract allegations, Defendants cannot take the alternative position that retaining the AGL funds constitutes unjust enrichment.

"Unjust enrichment is an equitable concept."  St. Paul Mercury Ins. Co. v. Meeks, 270 Ga. 136, 137 (1998).  "It is axiomatic that equitable relief is only available where there is no adequate remedy at law."  Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc., 14 F.3d 1507, 1518-19 (11th Cir. 1994).  The Georgia

--------

[11]  Moreover, the APA completely forecloses a claim for conversion here. Except for claims for fraud or non-monetary equitable relief, "the sole and exclusive basis . . . on which any party may recover monetary damages under this Agreement from any other party . . . shall be in accordance with the indemnification provisions set forth in . . . Article X."  (APA § 10.9).

Code specifically provides that "equity will not take cognizance of a plain legal right where an adequate and complete remedy is provided by law." O.C.G.A. § 23-1-4; see also Mitsubishi Int'l Corp., 14 F.3d at 1518 (holding that "[c]ases in which the remedy sought is the recovery of money . . . do not fall within the jurisdiction of equity," and although "where money is obtained by fraud, it is held upon a constructive trust for the defrauded person . . . if the remedy at law is adequate a suit in equity cannot be maintained against the fraudulent person"). "[A] claim for unjust enrichment is not a tort, but an alternative theory of recovery if a contract claim fails. The theory of unjust enrichment applies when there is no legal contract and when there has been a benefit conferred which would result in an unjust enrichment unless compensated." Tidikis v. Network for Med. Comms. & Research, LLC, 274 Ga. App. 807, 811 (Ga. Ct. App. 2005).

Other district courts have held, however, that dismissing an equitable count, even at the summary judgment stage, is not appropriate "merely because [a claimant] is prohibited under Georgia law from *recovering* under a breach of contract theory and an unjust enrichment theory. . . . [The claimant] cannot recover under both [legal] and [equitable claims] but will be required at trial to elect under which of these remedies it wishes to proceed." McBride v. Life Ins. Co. of Va.,

190 F. Supp. 2d 1366, 1378 (M.D. Ga. 2002) (denying summary judgment on plaintiff's unjust enrichment claim, where plaintiff filed a complaint alleging fraud and misrepresentation, violation of RICO, breach of contract, and unjust enrichment, because "[a]t trial the jury will be instructed that Plaintiff may recover on his fraud claim or unjust enrichment claim only if the jury finds that there was no breach of contract"); <u>Original Appalachian Artworks, Inc. v. Schlaifer Nance & Co.</u>, 679 F. Supp. 1564, 1579 (N.D. Ga. 1987) (denying summary judgment on counterclaimant's alternative grounds for relief of quantum meruit and unjust enrichment where it also asserted breach of contract and conspiracy claims, noting that "[o]f course, [the counterclaimant] can recover on only one of the three grounds.  At trial the jury will be instructed that [the counterclaimant] may recover on its quantum meruit or unjust enrichment claim only if the jury finds that there was no breach of contract").

Defendants allege that Plaintiffs unjustly retained the AGL payment to their detriment.  The Court finds that Defendants currently are entitled to assert an unjust enrichment claim alternative to their breach of contract claim under the Agreement, though they cannot recover under both theories.[12]  Plaintiffs' Motion

___

[12]  Plaintiffs rely largely on <u>Am. Casual Dining, L.P., v. Moe's S.W. Grill, L.L.C.</u>, 426 F. Supp.2d 1356, 1372 (N.D. Ga. 2006), for their argument that despite

for Judgment on the Pleadings on Defendants' claim for unjust enrichment is denied.

## III.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Judgment on the Pleadings [22] is **GRANTED** in part and **DENIED** in part.  Defendants' fraud claims, Counts V, VIII, and X, are dismissed without prejudice.  Plaintiffs' Motion for Judgment on the Pleadings is granted as to Defendants' conversion claim (Count III) and denied as to Defendants' breach of contract claim (Count IV) and unjust enrichment claim (Count II).

**SO ORDERED** this 17th day of May, 2007.


_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE

---

the Federal Rules' liberal pleading allowances for alternative pleading, Defendants cannot assert both a claim for breach of contract and unjust enrichment.  That case is distinguishable.  In Am. Casual Dining, the court noted that while "it is permissible to assert alternative and inconsistent claims, [a claimant] cannot claim *within a single count* that there was an agreement and that [the claimant] was unjustly enriched."  Id. at 1372 (emphasis added).  In this case, Defendants' count of unjust enrichment does not suffer from this internal inconsistency.